## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK -- MANHATTAN DIVISION

| | |
|---|---|
| **TERRY FABRICANT**, a California resident, individually and as the representative of a class of similarly-situated persons,<br><br>       **Plaintiff,**<br><br>v.<br><br>**PREMIUM MERCHANT FUNDING ONE, LLC**,<br><br>       **Defendant.** | **No.** 1:19-cv-00758<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff, Terry Fabricant ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed telemarketing calls to

cellular telephones without the "prior express written consent" of the called party. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

4.     Defendant Premium Merchant Funding One, LLC ("PMF") made automated telemarketing calls to Plaintiff using equipment prohibited by the TCPA, even though it did not have his prior express written consent to do so.

5.     Plaintiff did not give prior express written consent to receive an autodialed phone call on his cellular phone from PMF.

6.     This case challenges PMF's practice of initiating autodialed telemarketing calls to cellular telephones without the prior express written consent of the called party as required by the TCPA. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

7.     Plaintiff seeks class-wide relief against PMF for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means of obtaining redress for PMF's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

8.      PMF's practice caused actual harm to Plaintiff and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

## PARTIES

9.      Plaintiff, Terry "Luke" Fabricant, is an individual and a citizen of California, residing in Los Angeles, California.

10.     Defendant Premium Merchant Funding One, LLC is a New York limited liability company headquartered at 40 Wall Street Suite 501, New York, New York 10005.

## JURISDICTION AND VENUE

11.     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

12.    Personal jurisdiction exists in New York because PMF's principal place of business is in New York, a substantial portion of the conduct took place in New York, and PMF has transacted business and made or performed contracts substantially connected with the State.

13.    Venue is proper in the Southern District of New York because PMF resides in this District, PMF has sufficient contacts with this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## BACKGROUND AND ENFORCEMENT OF THE TCPA

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.    When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling

104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.* at ¶¶ 2, 8.

16.   The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing*, https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited Jan. 15, 2019).

## THE TCPA PROHIBITS AUTOMATED TELEMARKETING CALLS

17.   The TCPA requires prior express written consent for all autodialed telemarketing calls to cellular telephone numbers. *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200(f)(1), (12).

18.   "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice,

and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

19.    "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i)(A).

<u>FACTS</u>

20.    Advertising by making calls to consumers' cellular phones uses the consumers' equipment.

21.    PMF transmitted autodialed calls to cellular phones—those of Plaintiff and the other members of the putative Class—to promote PMF's products and services without the called parties' prior express written consent.

22.    PMF initiated the autodialed calls directly on its own behalf or through an agent.

**A.    PMF called cellular phones using an autodialer.**

23.    PMF called Plaintiff's cellular phone using an autodialer to advertise PMF's loan options.

24.    On March 7, 2018 at 9:17 a.m. PST, Plaintiff received an unsolicited call on his cellular phone.

25.    The call began with a distinctive pause and a "beep" or "click" after Plaintiff answered. Plaintiff said, "Hello?" and there was a pause and a "beep" or "click" before a live person came on the phone. A pause followed by a "click" or "beep" is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *See* 2003 Order, 18 FCC Rcd. at 14022, n. 31. (in 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call.").

26.    An unidentified "screener" asked Plaintiff a series of introductory questions then connected the call to "Kevin." "Kevin" asked Plaintiff is he was interested in a personal loan. Plaintiff requested that "Kevin" send him an e-mail with an explanation for the call.

27.    "Kevin" sent Plaintiff an e-mail from kslucher@premiummerchantfunding.com about applying for a loan:

> Sent: 3/7/2018 9:25:58 AM Pacific Standard Time
> Subject: Supply purchase funding
>
> Hi Terry. Click on the link below and fill in the fields marked with the red astericks [*sic*] and attach your last 4 months bank statements.
>
> https://www.pmfus.com/slucher
>
> I will put together a quote and get it back to you within a day.
>
> **Kevin Slucher | Funding Specialist**
> Premium Merchant Funding
> 40 Wall Street, Suite 501 | New York, NY 10005
> Direct Tel: (646) 492-8327 | Fax: (929) 358-7430
>
> Email:kslucher@premiummerchantfunding.com



*See* Exhibit A (e-mail).

28.    On April 30, 2018 at 7:56 a.m. PST, Plaintiff received another unsolicited call on his cellular phone. Plaintiff heard a pause and a "beep" or "click" before "Peter" picked up the line. Plaintiff asked "Peter" to send him an e-mail with an explanation for the call.

29.    "Peter"        sent        Plaintiff        an        e-mail        from pfeierman@premiummerchantfunding.com about applying for a loan:

> Sent: 4/30/2018 8:03:13 AM Pacific Standard Time
> Subject: Its Peter!! Good Morning
>
> Hey Terry
>
> Just spoke to you on the phone. As discussed, please email or fax the required paperwork to (929) 358-7430 at your earliest convenience. I will deliver the most business sensible and best funding arrangement to suit your needs. As part of the initial process, I will require completion of the information shown below.
>
> Please include the following documents at minimum:
>
> **Business Banking Statements (Last 3 Months )**
> **Updated Data Form**
>
> I will get back to you promptly with an offer for your consideration. We will conduct a [*sic*] initial cash flow analysis and put a quote in front of you so you can select from several different options and terms. We have an approval rate of over 89% and simply put, we can provide you the most money.
> …
>
> **Peter Feierman | Chief Funding Specialist**
> Premium Merchant Funding

9

40 Wall Street, Suite 501 | New York, NY 10005
Tel: (646)-921-8930 | Fax:(929)-358-7430

*See* Exhibit B (e-mail).

30.   On April 30, 2018, PMF called Plaintiff's cellular phone at 3:20 p.m., 3:22 p.m., 3:23 p.m., and 3:24 p.m. When Plaintiff answered he heard a pause and a "beep" or "click" before "Peter" picked up the line. Plaintiff asked "Peter" to stop calling him. "Peter" said that he had "money ready to give [Plaintiff] today" and to "just give [him] a few minutes." Plaintiff hung up the call.

31.   A few months later, on August 29, 2018 at 11:32 a.m., PMF called Plaintiff. After a pause and a "beep" or "click," "Henry" picked up and asked if Plaintiff wanted money. Plaintiff asked "Henry" to send him an e-mail.

32.   "Henry"       sent       Plaintiff       an       e-mail       from hsasson@premiummerchantfunding.com about a $100,000 loan:

> Sent: 8/29/2018 11:48:31 AM Pacific Standard Time
> Subject: HENRY FROM PREMIUM - SEND LAST 3
> MONTHS OF BANK STATEMENTS
>
> Luke,
>
> I just got a pre approval from the investors about getting you
> the 100k. All they need to see is the last 3 months of your
> bank statement[s]. Email it or fax it to me at 347-801-2388.

Henry Sasson
Funding Account Executive
Premium Merchant Funding
40 Wall St.
New York, NY 10005
P: 646-766-0849 F: 347-801-2388

*See* Exhibit C (e-mail).

33.   The "pause" or "click," as well as the repetitive nature of the call indicate that the calls were made as part of a telemarketing campaign and that the calls were made using an automatic telephone dialing system.

34.   The TCPA defines "automatic telephone dialing system," or "ATDS," as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

35.   PMF initiated unauthorized telephone solicitations to the cellular phones of Plaintiff and other members of the Class using an ATDS to advertise the availability of a loan with PMF without their prior express written consent.

36.   PMF used an ATDS to call the cellular phones of Plaintiff and other Class members in order to encourage them to apply for a loan, and did so without their prior express written consent.

11

37.   PMF's autodialed calls to cellular phones were designed to offer PMF's goods or services for sale.

38.   Plaintiff did not give PMF his cellular telephone number or request information about a loan.

39.   Plaintiff did not expressly consent in writing to receive PMF's autodialed telemarketing calls to his cellular phone.

## CLASS ALLEGATIONS

40.   Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against PMF on behalf of himself and all other persons similarly situated throughout the United States.

41.   Plaintiff proposes the following class definition:

> All persons in the United States (1) who received one or more advertising telephone calls, (2) to their mobile or cellular telephone number, (3) placed by or on behalf of PMF using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

42.   Excluded from the class are PMF, any entity in which PMF has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

43.    The proposed class members are identifiable through phone records and phone number databases.

44.    Plaintiff is a member of the proposed class.

45.    The automated technology PMF used to call Plaintiff's cell phone is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable.

46.    There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.    Whether PMF used an automatic telephone dialing system to call the cellular phones of Plaintiff and others;

b.    Whether PMF initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

c.    Whether PMF is liable for violations of the TCPA;

d.    Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

e.     Whether PMF's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

f.     Whether Plaintiff and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

47.    Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular telephone lines through the same or similar dialing system.

48.    Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class he seeks to represent. Plaintiff is a victim of ATDS telemarketing to his cellular phone without any emergency purpose and without his prior express written consent, and he is committed to the vigorous prosecution of this action. Plaintiff has retained counsel competent and experienced in complex TCPA class action litigation. Plaintiff will vigorously prosecute

this action. Plaintiff and his counsel will fairly and adequately protect the interest of members of the class.

49.   Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy. The only individual questions concern identification of class members, which will be ascertainable from records maintained by PMF or their agents.

50.   The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

**COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***

51.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein, and brings Count I individually and on behalf of the class.

52.   The foregoing acts and omissions of PMF constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, by

making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

53.   As a result of PMF's violations of the TCPA, 47 U.S.C. §227, Plaintiff and members of the class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

54.   Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting PMF from violating the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

55.   PMF's violations were knowing or willful.

56.   If the Court determines that PMF's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A.   Certification of the proposed class;

B.   Appointment of Plaintiff as representative of the class;

C.   Appointment of Plaintiff's counsel as counsel for the class;

D.   An order awarding statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E.   An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F.   An order enjoining PMF from engaging in the same or similar unlawful practices alleged herein;

G.   An order awarding costs of suit;

H.   Leave to amend this Complaint to conform to the evidence presented at trial; and

I.   Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Dated: January 25, 2019         Respectfully submitted,

                                TERRY FABRICANT,
                                individually and as the
                                representative of a class of
                                similarly-situated persons,


                                /s/ Kim E. Richman

RICHMAN LAW GROUP
Kim E. Richman (# 629960)
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, New York
Telephone: (212) 687-8291

Phillip A. Bock (pro hac vice to be applied for)
Tod A. Lewis (pro hac vice to be applied for)
David M. Oppenheim (pro hac vice to be applied for)
Mara A. Baltabols (pro hac vice to be applied for)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel: (312) 658-5500
Fax: (312) 658-5555
tod@classlawyers.com